UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| FARMERS ALLIANCE MUTUAL INSURANCE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AMERICAN FAMILY INSURANCE COMPANY, INTERESTED PARTY; STEVEN HORTER, INTERESTED PARTY; JOHN HORTER, INTERESTED PARTY; J & J HORTER FARM PARTNERSHIP, INTERESTED PARTY; AND RYAN RUCKTAESCHEL, INTERESTED PARTY;<br><br>Defendants. | 4:23-CV-04154-RAL<br><br><br>OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

The question in this declaratory judgment action is which insurance company must defend and indemnify Steven Horter for a lawsuit arising out of a tractor accident: American Family Insurance Company, who insured the tractor and farm where the accident occurred, or Farmers Alliance Mutual Insurance Company, who insured the allegedly negligent tractor driver Steven Horter? For the reasons explained below, this Court finds that the duty to defend and indemnify lies with Farmers Alliance.

I.   Facts

Ryan Rucktaeschel suffered a crushed ankle in May 2023 while working on his employer John Horter's farm in Day County, South Dakota. Doc. 20 ¶¶ 1–2; Doc. 24 ¶¶ 1–2; Doc. 28-1; Doc. 27 ¶ 4; Doc. 30 ¶ 4. John's father Steven Horter was helping John that day and driving John's

1

tractor when the accident occurred.[1] Doc. 20 ¶¶ 1–3; Doc. 24 ¶¶ 1–3; Doc. 27 ¶ 10; Doc. 30 ¶ 10; Doc. 28-1. After Farmers Alliance filed this declaratory judgment action, Rucktaeschel and his wife sued Steven and John in state court. Doc. 27 ¶ 1; Doc. 30 ¶ 1; Doc. 28-1. Rucktaeschel alleges that he was working as a farm employee for John when Steven negligently ran over Rucktaeschel's leg with John's tractor. Doc. 27 ¶¶ 2–4; Doc. 30 ¶¶ 2–4; Doc. 28-1.

Different companies insured John and Steven at the time of the accident. American Family issued a Farm/Ranch Policy to John, his wife, and J & J Horter Farm Partnership providing three types of coverage relevant here: (1) Farm Premises and Operations Commercial Liability Coverage, Doc. 20-5 at 1–17; (2) a Personal Liability Coverage Endorsement, Doc. 20-5 at 36–41, to the Commercial Liability Coverage; and (3) a Farm Employers Liability Coverage Endorsement to the Commercial Liability Coverage, Doc. 20-4 at 65–67. Doc. 27 ¶¶ 11–12, 18, 21; Doc. 30 ¶¶ 11–12, 18, 21. The Farm/Ranch Policy insured the tractor involved in the accident as farm personal property. Doc. 20 ¶ 5; Doc. 24 ¶ 5. American Family also issued an Umbrella Policy for losses above the limits of the underlying coverage in the Farm/Ranch Policy. Doc. 20-6.

Farmers Alliance insured Steven under an Agri-Range Policy providing Farm Premises and Operations Commercial Liability Coverage and Personal Liability Coverage. Docs. 20-1, 20-2; Doc. 20 ¶ 8; Doc. 24 ¶ 8. Farmers Alliance also issued Steven a Farm Umbrella Liability Policy, Doc. 20-3, for losses exceeding coverage under his Commercial Liability Policy's underlying coverage. Doc. 20 ¶ 10; Doc. 24 ¶ 10.

Farmers Alliance now moves for summary judgment, seeking a declaration that American Family's liability and umbrella coverages provide primary liability coverage to Steven for Rucktaeschel's lawsuit. Docs. 1, 19, 21. American Family filed a cross-motion for summary

---

[1] This Court uses John and Steven Horters' first names to avoid confusion.

judgment, seeking a declaration that it does not have a duty to defend or indemnify Steven from Rucktaeschel's lawsuit. Doc. 25.

## II. Discussion

### A. Summary Judgment Standard

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On summary judgment, the evidence is "viewed in the light most favorable to the nonmoving party." True v. Nebraska, 612 F.3d 676, 679 (8th Cir. 2010) (citation omitted). There is a genuine issue of material fact if a "reasonable jury [could] return a verdict for either party" on a particular issue. Mayer v. Countrywide Home Loans, 647 F.3d 789, 791 (8th Cir. 2011). A party opposing a properly made and supported motion for summary judgment must cite to particular materials in the record supporting the assertion that a fact is genuinely disputed. Fed. R. Civ. P. 56(c)(1); Gacek v. Owens & Minor Distrib., Inc., 666 F.3d 1142, 1145 (8th Cir. 2012). "Mere allegations, unsupported by specific facts or evidence beyond the nonmoving party's own conclusions, are insufficient to withstand a motion for summary judgment." Thomas v. Corwin, 483 F.3d 516, 527 (8th Cir. 2007). When there are cross motions for summary judgment, each party's motion must be evaluated independently in accordance with the standard weight of evidence accorded to the nonmoving party to determine if there is any genuine issue of material fact. See Fed. Ins. v. Great Am. Ins., 893 F.3d 1098, 1102 (8th Cir. 2018).

### B. South Dakota Law on Insurance Coverage Issues

The parties agree that South Dakota law governs the legal issues in this case filed under diversity of citizenship jurisdiction, 28 U.S.C. § 1332. Secura Ins. v. Horizon Plumbing, Inc., 670

3

F.3d 857, 861 (8th Cir. 2012). Interpretation of an insurance policy presents a question of law for the court. Swenson v. State Farm Fire & Cas. Co., 891 F. Supp. 2d 1101, 1107 (D.S.D. 2012). When determining whether a policy provides coverage, courts in South Dakota read the contract as a whole and give unambiguous language its plain and ordinary meaning. Culhane v. W. Nat'l Mut. Ins., 704 N.W.2d 287, 293 (S.D. 2005); Pete Lien & Sons, Inc. v. First Am. Title Ins., 478 N.W.2d 824, 827 (S.D. 1991). "An insurer's duty to defend and its duty to indemnify are separate and independent duties." N. Star Mut. Ins. v. Korzan, 873 N.W.2d 57, 61 (S.D. 2015). The duty to defend is broader than the duty to indemnify, and the insurer has the burden "to show the claim clearly falls outside of the policy coverages and that there is no duty to defend." Id. (cleaned up and citation omitted). Courts in South Dakota consider the pleadings in the underlying action and the policy's language to determine whether there is a duty to defend. Id.

The parties' cross-motions for summary judgment raise two main issues: (1) whether the definition of an "insured" in American Family's Commercial Liability Coverage requiring that there be "no other insurance covering the liability available to" Steven violates public policy in South Dakota; and (2) whether there is other insurance available to Steven covering the claims in Rucktaeschel's lawsuit.

**C.  The definition of "insured" in American Family's Commercial Liability Coverage does not violate public policy.**

Farmers Alliance argues that American Family's Commercial Liability Coverage provides Steven primary liability coverage for Rucktaeschel's lawsuit. Doc. 21 at 9. Under Coverage L of the Commercial Liability Coverage, American Family agrees:

> "We" pay, up to the "limit" that applies, those sums which an "insured" is legally liable because of "bodily injury" or "property damage" to which this insurance applies. The "bodily injury" or "property damage" must be caused by an "occurrence" and arise out of the ownership, maintenance, or use of the "insured premises" or operations that are necessary or incidental to the "insured premises."

4

Doc. 20-4 at 27; Doc. 27 ¶ 13; Doc. 30 ¶ 13. The Commercial Liability Coverage excludes coverage for bodily injury arising out of the use of a "motorized vehicle" except as provided in the "Supplemental Motorized Vehicles and Watercraft Coverage." Doc. 20-5 at 8; Doc. 27 ¶ 15; Doc. 30 ¶ 15. The Supplemental Motorized Vehicle and Watercraft section states that American Family will pay for bodily injury arising out of a "'motorized vehicle' while on the 'insured premises', if the 'motorized vehicle' is not subject to motor vehicle registration because of its type or use." Doc. 20-4 at 28; Doc. 20-5 at 6; Doc. 27 ¶ 16; Doc. 30 ¶ 16. This Supplemental coverage, however, is "[s]ubject to all the 'terms' of the Principal Coverages." Doc. 20-5 at 6; Doc. 27 ¶ 17; Doc. 30 ¶ 17. The word "terms" means "all provisions, limitations, exclusions, conditions, and definitions that apply to this Commercial Liability Coverage." Doc. 20-5 at 4. Since being an "insured" is one of the "terms" of Coverage L of the Commercial Liability Coverage, Steven must also be an "insured" to be covered under the Supplemental Motorized Vehicle Coverage section. See Doc. 27 ¶ 17; Doc. 30 ¶ 17.

The parties agree that the governing definition of "insured" comes from American Family's Commercial Liability Coverage:

> 7.    "Insured"- - If shown on the "declarations" as an Individual, "insured" means "you" and, if members of "your" household, "your" spouse and "your" or "your" spouse's relatives under the age of 21.
>
> If shown on the "declarations" as a Partnership or a Joint Venture, "insured" means "you" and all "your" partners or members and their spouses, but only with respect to the conduct of "your" "farming" operations.
> . . . .
> "Insured" also includes:
> . . . .
> d.    persons other than "your" employees, including another person or an organization legally liable for the conduct of such persons, but only:
>     1) for liability arising out of the use or care of vehicles or animals owned by "you" and to which this Commercial Liability Coverage applies; and
>     2) if there is no other insurance covering the liability available to them.

5

Doc. 20-5 at 2–3; Doc. 27 ¶¶ 14, 17; Doc. 30 ¶¶ 14, 17. All agree that Steven is not a member of John's household, not a partner in J & J Horter Farms Partnership, and is not alleged in Rucktaeschel's lawsuit to be John's employee. Doc. 27 ¶¶ 7–9; Doc. 30 ¶¶ 7–9. Steven can only qualify as an "insured," then, if his liability arises out of the use of John's tractor and "there is no other insurance covering the liability available to [Steven]." Doc. 20-5 at 3.

Farmers Alliance argues that the "escape clause" in definition 7.d.2)—saying that a person is an insured only if there is "no other insurance covering the liability available to them"—violates the public policy expressed in SDCL § 32-35-70 and South Dakota case law holding that primary liability lies with the insurer of the owner of the vehicle. South Dakota's public policy is found "in its statutes and cases." Gloe v. Iowa Mut. Ins., 694 N.W.2d 238, 244–45 (S.D. 2005). Courts in South Dakota will not void contracts under "the pretext of public policy" unless they are "firmly and solemnly convinced that an existent public policy is clearly revealed." L. Cap., Inc. v. Kettering, 836 N.W.2d 642, 646 (S.D. 2013) (cleaned up and citation omitted).

Section 32-35-70 is South Dakota's motor vehicle financial responsibility law. Wheeler v. Farmers Mut. Ins. Co. of Neb., 824 N.W.2d 102, 110 (S.D. 2012). It mandates that an

> owner's policy of liability insurance referred to in § 32-35-68 shall insure the person named therein and any other person as insured, using any insured vehicle or vehicles with the express or implied permission of the named insured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of the vehicle or vehicles within the United States of America or the Dominion of Canada, subject to limits exclusive of interests and costs, with respect to each insured vehicle, as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident and, subject to the limit for one person, fifty thousand dollars because of bodily injury to or death of two or more persons in any one accident, and twenty-five thousand dollars because of injury to or destruction of property of others in any one accident.

SDCL § 32-35-70. Section 32-35-68 defines a "motor vehicle liability policy":

6

> A motor vehicle liability policy as said term is used in this chapter shall mean an owner's policy or an operator's policy of liability insurance, certified as provided in § 32-35-65[2] or 32-35-66[3] as proof of financial responsibility for the future, and issued, except as otherwise provided in § 32-35-66 by an insurance carrier duly authorized to transact business in this state, to or for the benefit of the person named therein as insured.

SDCL § 32-35-68. Statutes like § 32-35-70 that extend coverage to permissive users of a vehicle are called "omnibus clause[s]" in insurance parlance. Estate of Trobaugh ex rel. Trobaugh v. Farmers Ins. Exch., 623 N.W.2d 497, 501–02 (S.D. 2001). At one time, South Dakota's financial responsibility law only applied to motorists involved in an accident or "convicted of certain motor vehicle offenses." Cimarron Ins. v. Croyle, 479 N.W.2d 881, 883 (S.D. 1992), superseded by statute on other grounds, SDCL § 32-35-70. In 1986, however, the South Dakota Legislature enacted SDCL § 32-35-113, which requires that "[e]very driver or owner of a motor vehicle shall at all times maintain" proof of financial responsibility. SDCL § 32-35-113; Cimarron Ins., 479 N.W.2d at 883.

Whether a state's omnibus clause applies to a particular type of insurance policy depends, of course, on the statutory language. See 8 Jordan R. Plitt et al., Couch on Insurance § 111:26 (3d. ed. June 2024 update) ("The highly statutorily driven issue of omnibus coverage requires a look at specific statutes to determine if omnibus coverage applies to all types of liability policies and

---

[2]Section 32-35-65 provides:
> Proof of financial responsibility for the future may be furnished by filing with the Department of Public Safety the written certificate of any insurance carrier duly authorized to do business in this state certifying that there is in effect a motor vehicle liability policy for the benefit of the person required to furnish proof of financial responsibility. Such certificate shall give the effective date of such motor vehicle liability policy, which date shall be the same as the effective date of the certificate, and shall designate by explicit description or by appropriate reference all vehicles covered thereby, unless the policy is issued to a person who is not the owner of a motor vehicle.

[3]SDCL § 32-35-66 concerns a nonresident's obligation to file a certificate of insurance.

7

where no distinction may be made between one kind of policy and another."); Gov't Emp. Ins. v. Moore, 580 S.E.2d 823, 826–28 (Va. 2003) (holding that Virginia's statutory omnibus clause did not apply to a personal umbrella liability policy because the policy was not issued "upon any motor vehicle" as required by the statute).

Here, § 32-35-70 requires that an "owner's policy of liability insurance referred to in § 32-35-68" insure permissive users "using any insured vehicle or vehicles" for damages "arising out of" the "use of the vehicle or vehicles." SDCL § 32-35-70. Section 32-35-68, in turn, suggests that a policy must be "certified as provided in § 32-35-65 . . . as proof of financial responsibility" to qualify as an "owner's policy" or a "motor vehicle liability policy" subject to § 32-35-70's omnibus clause. SDCL § 32-35-68. Another section of Chapter 32-35 requires an "owner's policy of liability insurance" to "designate by explicit description or by appropriate reference all vehicles with respect to which coverage is thereby granted." § 32-35-69. Farmers Alliance neither alleges that American Family's Commercial Liability Coverage was certified as proof of financial responsibility nor identifies the portion of the Farm/Ranch Policy explicitly describing the tractor involved in the accident as an insured vehicle for purposes of liability. Farmers Alliance also fails to explain how the Commercial Liability Coverage in John's Farm/Ranch Policy could qualify as a motor vehicle liability policy under §§ 32-35-70 and 32-35-68 when it generally excludes coverage for bodily injury arising out of the use of a motorized vehicle and only makes an exception for a motorized vehicle that "is not subject to motor vehicle registration because of its type or use." Doc. 20-4 at 28. In fact, Farmers Alliance does not offer any textual analysis of Chapter 32-35 at all.

Farmers Alliance also has cited no cases saying that § 32-35-70 applies to policies other than motor vehicle liability policies. And the Supreme Court of South Dakota's discussion of

8

§ 32-35-70 has almost always been in the context of "automobile liability policies." See, e.g., State Farm Auto. Ins. v. Bottger, 793 N.W.2d 389, 392 (S.D. 2011) (explaining that § 32-35-70 "mandates that automobile liability policies insure the person named in the policy" as well as permissive users); Schulte v. Progressive N. Ins., 699 N.W.2d 437, 439 (S.D. 2005) (stating that § 32-35-70 "requires that automobile insurance policies provide vehicle owners with certain liability coverage for acts arising out of the ownership of insured vehicles").

Rather than responding to American Family's argument that § 32-35-70 does not apply to farm/ranch or commercial liability policies, Farmers Alliance relies on the "general rule" or public policy that primary liability lies with the insurer of the vehicle's owner. See Doc. 29 at 1 (Farmers Alliance's reply brief stating "[w]hether [§ 32-35-70] does or does not apply is not seen by Farmers Alliance to be critical to its coverage position"). But this general rule or public policy is not so strong that this Court can void the "escape clause" in definition 7.d.2) of the American Family Commercial Liability Policy. The Supreme Court of South Dakota has, at least two times, declined to use Chapter 32-35 as a public policy basis for creating coverage where it would not otherwise exist. In Dairyland Insurance Co. v. Kluckman, 201 N.W.2d 214 (S.D. 1972), for instance, the court rejected an argument that the public policy expressed in § 32-35-70 required that a garage liability policy issued to a car dealer extend coverage to an individual test driving one of the dealer's vehicles. Id. at 217. "Because there was no requirement [at the time of the accident] that garage liability policies contain an omnibus clause," the court declined to consider "whether we should follow cases which have read the provisions of financial responsibility acts into a liability insurance policy." Id. at 217–18.[4] Similarly, the court in Western Casualty & Surety Co. v.

---

[4]South Dakota has since required automobile insurance policies issued to car dealers to provide coverage under certain conditions for individuals borrowing the dealers' cars. Dairyland Ins., 201 N.W.2d at 218; SDCL § 58-23-4.

9

Anderson, 273 N.W.2d 203 (S.D. 1979), rejected a public policy argument that § 32-35-70 should apply to "all insurance policies" when, at the time, the statute only applied to people who failed to pay a judgment arising out of an automobile accident or were convicted of certain motor vehicle violations. Id. at 205; see also Novak v. State Farm Mut. Auto. Ins., 293 N.W.2d 452, 454 (S.D. 1980) (finding that Chapter 32-35 did not apply to an automobile liability insurance policy because the policy was not certified to serve as proof of financial responsibility).

The cases Farmers Alliance relies on are no more convincing. Most involved car accidents where both the owner's and the permissive user's motor vehicle liability policies provided coverage. See, e.g., Union Ins. v. Farmland Ins., 389 N.W.2d 820 (S.D. 1986); Nat'l Farmers Union Prop. & Cas. Co. v. Bang, 516 N.W.2d 313 (S.D. 1993); Emps. Mut. Cas. Co. v. State Auto Ins., 623 N.W.2d 462, 466–67 (S.D. 2001). And none of them "firmly and solemnly convince[]" this Court that South Dakota's public policy prohibits clauses like definition 7.d.2) in farm/ranch or commercial liability policies.[5] Law Cap., Inc., 836 N.W.2d at 646. Because definition 7.d.2) limiting who is an "insured" is not void, this Court must determine whether there is any "other insurance covering the liability available to" Steven.

**D.     Steven has other insurance covering the liability for Rucktaeschel's lawsuit available under Farmers Alliance's Policy but not American Family's Policy.**

> **1. American Family's Farm Employers Liability Coverage does not cover Steven.**

---

[5]Farmers Alliance asserts in its reply brief that "some courts have found [escape] clauses against public policy." Doc. 29 at 2. As Farmers Alliance recognizes, however, the Supreme Court of South Dakota has never held that escape clauses are invalid. And while escape clauses might be "disfavored, they are generally enforced in recognition that the insurer is entitled to write the policy so to limit its coverage." 15A Jordan R. Plitt et al., Couch on Insurance § 219:37 (3d. ed. June 2024 update) (footnote omitted).

10

The Farm Employers Liability Coverage Endorsement in American Family's Policy issued to John states "'We' pay all sums which an 'insured' becomes legally obligated to pay as 'damages' to a 'farm employee' due to 'bodily injury' which arises out of and in the course of employment." Doc. 20-4 at 66; Doc. 27 ¶¶ 18–19; Doc. 30 ¶¶ 18–19. The Farm Employers Liability Coverage Endorsement does not separately define "insured," Doc. 27 ¶ 20; Doc. 30 ¶ 20; Doc. 20-4 at 65–67, so the definition of "insured" in American Family's Commercial Liability Coverage applies, see Korzan, 873 N.W.2d at 64 (explaining that endorsements do not limit or abrogate provisions in the body of the policy unless the endorsement's provisions "expressly state[]" that they "are substituted for those in the body of the policy, or unless the provisions in the policy proper and in the rider or endorsement are conflicting" (citation omitted)). Steven is not an "insured" under the Employers Liability Coverage, then, unless "there is no other insurance covering the liability available to" him. Doc. 20-5 at 2–3.

Farmers Alliance does not specifically argue that the Farm Employers Liability Coverage Endorsement applies to Steven. Rucktaeschel's lawsuit does not allege that Steven is John's employee, Doc. 27 ¶ 9; Doc. 30 ¶ 9, and it is undisputed that Steven was performing a neighborly exchange of farm services for John when the accident happened,[6] Doc. 27 ¶ 10, Doc. 30 ¶ 10.

### 2. American Family's Personal Liability Coverage does not cover Steven.

Farmers Alliance argues that Steven meets the definition of "insured" under American Family's Personal Liability Endorsement because he was using a vehicle owned by John. Doc. 21 at 9. The Personal Liability Endorsement provides in relevant part:

---

[6]Farmers Alliance's brief mentions the gratuitous employee doctrine in South Dakota, Doc. 21 at 14, but fails to explain how that would trigger coverage under the Farm Employers Liability Coverage Endorsement for Rucktaeschel's claims against Steven.

11

> With respect to the Personal Liability Coverage provided by this endorsement, the definitions of "you" and "your", "insured", and "insured premises" are replaced by the following:
> The words "you" and "your" mean the person or persons named as the insureds on this endorsement. This includes "your" spouse if a resident of "your" household. "Insured" means:
> . . .
> e.  persons using or caring for vehicles, watercraft, or animals owned by an "insured" as defined under a., b., or c. above and to which this Personal Liability Coverage applies (This does not include persons using or caring for vehicles, watercraft, or animals in the course of "business" or without the owner's consent.).

Doc. 20-5 at 36; Doc. 27 ¶ 21; Doc. 30 ¶ 21. The term "business" means "a trade, a profession, or an occupation including 'farming', all whether full or part time."[7] Doc. 20-5 at 37; Doc. 27 ¶ 22; Doc. 30 ¶ 22.

The Personal Liability Endorsement does not cover Steven. Rucktaeschel's lawsuit alleges that Steven was "performing work" on John's farming operation when Steven ran over Rucktaeschel's leg. Doc. 27 ¶ 3; Doc. 30 ¶ 3; Doc. 28-1 at 2. Farmers Alliance does not offer any evidence suggesting otherwise. See Doc. 21 at 10 n.6 (Farmers Alliance's brief stating that "Steven was using John's tractor in furtherance of John's farming operation"). Because Rucktaeschel claims that Steven was using the tractor as part of John's business, Steven does not meet the Personal Liability Endorsement's definition of an "insured."

Farmers Alliance also argues that Steven is covered under the Motorized Vehicle provision of the Incidental Coverages to the Personal Liability Endorsement. Doc. 21 at 9. To be covered under the Incidental Coverages, though, Steven must be an "insured[]," Doc. 20-5 at 37, under Coverage L of the Personal Liability Endorsement, id. at 38 (explaining that the Incidental

---

[7]The Policy goes on to say that "'Business' includes services regularly provided by an 'insured' for the care of others and for which an 'insured' is compensated. A mutual exchange of like services is not considered compensation." Doc. 20-5 at 37.

12

Coverages are "subject to the 'terms' of Coverages L and M provided by" the Personal Liability Coverage Endorsement). Because he is not, the Incidental Coverages don't apply to him.

### 3. Steven has coverage under the Personal Liability Endorsement to his Farmers Alliance Policy.

Coverage L in the Farmers Alliance Personal Liability Endorsement to Steven's Agri-Range Policy extends bodily injury and property damage liability to "liability arising out of the 'insured's' personal or non-business activities." Doc. 20-2 at 4. Steven is the "insured" under the Farmers Alliance Agri-Range Policy. Doc. 20-1 at 2. The Incidental Coverages section of the Personal Liability Endorsement addresses motorized vehicles:

> The following coverages are subject to the "terms" of Coverages L and M provided by this endorsement.
> . . . .
> 4.   **Motorized Vehicles** - - "We" pay for the "bodily injury" or the "property damage" which:
> . . . .
>    d.   results from a "motorized vehicle" that is unlicensed and:
>    1) while being used exclusively in the "insured's" own "farming" operations:
>       a) that occur on the "insured premises"; or
>       b) moving in the most direct route from one "insured premises" to another "insured premises"; or
>       c) moving to another location for the sole purpose of maintenance or repair of that "motorized vehicle; or
>    2) while being used off the "insured premises" for neighborly exchange of "farming" services.

Doc. 20-2 at 5–6; Doc. 27 ¶ 31; Doc. 30 ¶ 31.

Steven has coverage under 4.d.2) of the Incidental Coverages section of the Personal Liability Endorsement. The parties agree that Steven was operating John's tractor off the "insured premises" for a "neighborly exchange of farm services" when the accident occurred. Doc. 27 ¶ 10; Doc. 30 ¶ 10; Doc. 20 ¶¶ 2, 4, 6; Doc. 24 ¶¶ 2, 4, 6. Although Farmers Alliance argues that Steven only has coverage if he was operating a motor vehicle he owns, Doc. 21 at 10, the language of

4.d.2) does not confine coverage to instances where Steven uses his own vehicle. Rather 4.d.2) extends coverage to bodily injury resulting from the use of a "motorized vehicle" "while being used off the 'insured premises' for neighborly exchange of 'farming' services." Doc. 20-2 at 6. The Farmers Alliance definitions do not define "motor vehicle" and "motorized vehicle" as only those owned by Steven as the insured. Doc. 20-2 at 4. Farmers Alliance knows how to impose an ownership requirement—after all, it required that an insured own a golf cart for coverage under 4.b.1)—but didn't do so for coverage under 4.d.2). Because the Farmers Alliance Policy constitutes "other insurance covering the liability" for the accident available to Steven, Steven is not an insured under American Family's Commercial Liability Coverage.

### E. The "Other Insurance" clauses are not relevant.

Farmers Alliance's reply brief discusses the "other insurance" clauses in the parties' Commercial Liability Coverages and cites to South Dakota cases discussing "other insurance" clauses. Doc. 29 at 2–4. But "other insurance" clauses are relevant only when both policies provide coverage. See 2 Allan D. Windt, Insurance Claims and Disputes § 7:1 (6th ed. March 2024 update) ("'[O]ther insurance clauses apply when the coverage is concurrent."); 15A Couch on Insurance § 219:44 ("In cases where *more than one* insurance policy provides coverage for a loss, the insurance contracts are reviewed to see whether the documents address the issue of 'ranking' other policies for contribution purposes." (emphasis added)). Since American Family's Policy does not provide coverage, there is no need to analyze "other insurance" clauses or competing "escape" clauses.

### III. Conclusion

For the reasons stated above, it is

ORDERED that Plaintiff's Motion for Summary Judgment, Doc. 19, is denied. It is further

ORDERED that Defendant's Cross Motion for Summary Judgment, Doc. 25, is granted.

DATED this 26th day of September, 2024.

                BY THE COURT:

                _____
                ROBERTO A. LANGE
                CHIEF JUDGE